TERRACON CONSULTANTS WESTERN, INC.; TERRACON, INC.; LOCHSA, LLC; AND KLAI-JUBA ARCHITECTS, LTD., APPELLANTS, v. MANDALAY RESORT GROUP, FKA CIRCUS CIRCUS ENTERPRISES, INC.; MANDALAY DEVELOPMENT, FKA CIRCUS CIRCUS DEVELOPMENT CORP.; AND MANDALAY CORPORATION, RESPONDENTS.

No. 47844

March 26, 2009                                    206 P.3d 81

*Holland & Hart, LLP*, and *Gregory S. Gilbert* and *Sean D. Thueson*, Las Vegas; *McDowell, Rice, Smith & Buchanan* and *Thomas R. Buchanan*, Kansas City, Missouri, for Appellants Terracon Consultants Western, Inc., and Terracon, Inc.

*Weil & Drage, APC*, and *Jean A. Weil, Colin R. Harlow*, and *Anthony D. Platt*, Las Vegas, for Appellants Lochsa, LLC, and Klai-Juba Architects, Ltd.

*Haney, Woloson & Mullins* and *Wade B. Gochnour*, Las Vegas; *Santoro, Driggs, Walch, Kearney, Holley & Thompson* and *Dennis R. Haney* and *Shemilly A. Briscoe*, Las Vegas; *Niddrie, Fish & Buchanan* and *Martin N. Buchanan*, San Diego, California; *Girardi & Keese* and *David R. Lira* and *Shahram A. Shayesteh*, Los Angeles, California, for Respondents.

*Beckley Singleton, Chtd.*, and *Daniel F. Polsenberg*, Las Vegas; *Morris Polich Purdy, LLP*, and *Nicholas M. Wieczorek*, Las Vegas, for Amici Curiae.

# OPINION

By the Court, GIBBONS, J.:

The United States District Court for the District of Nevada has certified, under NRAP 5, the following questions to this court. Does the economic loss doctrine apply to contractors who solely provide services in construction defect cases? Does the economic loss doctrine apply in construction defect cases to design professionals, such as engineers and architects, who solely provide services, regardless of whether the services are rendered before or during construction? Although we accept the federal court's referral, we do so by reframing its two questions as one in order to address precisely the particular negligence claim and factual scenario that led to

the certification order and to avoid any overly broad conclusions about claims against "contractors," a term that the federal district court did not define in its certification order. Thus, we answer the following question. Does the economic loss doctrine apply to preclude negligence-based claims against design professionals, such as engineers and architects, who provide services in the commercial property development or improvement process, when the plaintiffs seek to recover purely economic losses?

The answer to the question is yes. "Purely economic loss" has been defined as " 'the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of [a] defective product, or consequent loss of profits, without any claim of personal injury or damage to other property.' " *Calloway v. City of Reno*, 116 Nev. 250, 257, 993 P.2d 1259, 1263 (2000) (first and second alterations in original) (quoting *American Law of Products Liability* (3d) § 60:36, at 66 (1991)), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241-44, 89 P.3d 31, 31-33 (2004). After examining relevant authority and contemplating the policy considerations behind the economic loss doctrine, we have determined that the doctrine's purpose—to shield defendants from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable—would be furthered by applying it to preclude the professional negligence claims at issue here. Thus, we conclude that the economic loss doctrine bars professional negligence claims against design professionals who provided services in the process of developing or improving commercial property when the plaintiffs' damages are purely financial.

## PROCEDURAL HISTORY AND FACTS

This matter arises from a removed diversity case in which a property owner brought a breach of contract and professional negligence action against certain design professionals (engineering and architectural firms). The property owner alleged that the design professionals provided negligent design advice upon which the property owner relied in making major improvements to its commercial real property, causing the property owner economic losses.

Respondents Mandalay Resort Group, Mandalay Development, and Mandalay Corporation (collectively, Mandalay) managed the construction of the approximately $1 billion Mandalay Resort and Casino (the resort) in Las Vegas. To complete the resort, Mandalay hired various subcontractors, including appellants Terracon Con-

sultants Western, Inc., Terracon, Inc. (collectively, Terracon), Lochsa, LLC, and Klai-Juba Architects, Ltd. Mandalay entered into a written contract with Terracon, under which Terracon agreed to provide geotechnical engineering advice about the subsurface soil conditions and recommended a foundation design for the property. The parties do not dispute that Terracon's work was limited to providing professional engineering advice and that Terracon was not involved in physically constructing the property. Although Mandalay did not have written agreements with Klai-Juba or Lochsa, those firms, apparently acting in accordance with an oral arrangement with Mandalay, provided architectural and engineering services, respectively, by designing parts of the resort's structure. As with Terracon, Klai-Juba and Lochsa played no role in the resort's physical construction.

In accordance with the written contract's terms, Terracon prepared a geotechnical report with its foundation design recommendations, which Mandalay implemented as it began erecting the resort. Based upon Terracon's soil analysis and the anticipated weight of the building, Terracon predicted a certain amount of settling underneath the foundation. According to Mandalay's complaint, however, the ultimate amount of settling exceeded Terracon's projections. Because Clark County believed that the settling presented a potential danger to the resort's structural integrity, the county required Mandalay to repair and reinforce the foundation before proceeding with the construction. Consequently, Mandalay sued Terracon for damages in state court, alleging that the deficient engineering advice caused the resort's foundation problems.[1] Mandalay's theories of recovery included breach of contract, breach of the covenant of good faith and fair dealing, and professional negligence.

Terracon removed the matter to the United States District Court for the District of Nevada and, thereafter, moved for partial summary judgment on Mandalay's professional negligence claim, arguing that the claim was barred under the economic loss doctrine. Mandalay opposed the motion, arguing, among other things, that as a matter of law the economic loss doctrine did not apply to negligence claims against design professionals or contractors who solely provide services.

Terracon also filed a third-party complaint against, among others, Lochsa and Klai-Juba for negligence, contribution, and equitable indemnity. Terracon argued that if the economic loss doctrine did not bar Mandalay's negligence claim, then the doctrine likewise would not bar its claims against Lochsa and Klai-Juba. In response, Lochsa

---

[1] Although, according to Mandalay's complaint, Terracon's negligence also caused property damage to the resort structure itself, we do not address that aspect of Mandalay's claim because the U.S. District Court asked this court only whether tort recovery is permitted *assuming the losses are purely economic.*

and Klai-Juba argued that the economic loss doctrine applied and moved the federal court to dismiss Terracon's third-party complaint on that basis.

The U.S. District Court denied without prejudice the motion for partial summary judgment and the motion to dismiss the third-party complaint, after determining that Nevada law was unclear on whether the economic loss doctrine applied to bar a claim grounded on allegations that design professionals negligently rendered services when the plaintiffs sought to recover purely economic losses.[2] The federal court thus asked this court to address the scope of Nevada's economic loss doctrine and, in particular, whether it applies to preclude negligence-based claims against engineers, architects, or other design professionals in construction defect cases, when the plaintiff seeks to recover purely economic losses.

Acknowledging that our caselaw addressing this doctrine contains nuanced ambiguities, we accept the federal court's referral. We reframe the questions presented therein, however, to answer directly whether the economic loss doctrine bars professional negligence claims against design professionals who provide only their services in the commercial property development or improvement process, when the plaintiffs are seeking to recover purely economic losses. In doing so, we point out that this opinion has no bearing on NRS Chapter 40's provisions governing actions brought based on construction defects in newly constructed residential property.[3] Appellants and respondents have briefed the issue, as directed, and we permitted certain professional organizations to file a brief as amici curiae.[4]

---

[2]The U.S. District Court, in presenting the certified questions, pointed out that this court's jurisprudence suggests that the economic loss doctrine might not extend to preclude tort-based claims against design professionals even when the plaintiffs are seeking to recover only financial losses. *See Calloway v. City of Reno*, 116 Nev. 250, 273 n.3, 993 P.2d 1259, 1274 n.3 (2000) (MAUPIN, J., concurring in part and dissenting in part) (pointing out, in dictum, that "economic losses without property damage or personal injury have been deemed recoverable in tort in connection with various types of professional malpractice/negligence claims"), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241-44, 89 P.3d 31, 31-33 (2004).

[3]In *Olson*, 120 Nev. 240, 89 P.3d 31, this court determined that the economic loss doctrine does not apply to preclude tort-based claims in which the plaintiffs seek to recover purely economic losses resulting from alleged construction defects in newly constructed residential properties. That decision was based, in part, on this court's reasoning that NRS Chapter 40 preserved the discrete right of a purchaser of a newly constructed residence to sue in tort to recover purely economic losses.

[4]The amici curiae brief was submitted on behalf of the American Institute of Architects (AIA), AIA Nevada; AIA Las Vegas; the American Council of Engineering Companies; the American Council of Engineering Companies of Nevada; the Design Professionals Coalition of the American Council of Engineering Companies; the National Society of Professional Engineers; the

## DISCUSSION

*NRAP 5*

This court has discretion in determining whether to accept and answer a question certified by a federal court. NRAP 5; *Volvo Cars of North America v. Ricci*, 122 Nev. 746, 749-51, 137 P.3d 1161, 1163-64 (2006). In deciding whether to exercise that discretion, this court looks to whether (1) the certified question's answer may be determinative of part of the federal case, (2) there is controlling Nevada precedent, and (3) the answer will help settle important questions of law. *See Volvo Cars*, 122 Nev. at 749, 137 P.3d at 1163.

As noted, the federal district court certified two questions. The first question asked whether the economic loss doctrine precluded tort claims brought against contractors who solely provide services. As the defendants here were design professionals, namely engineers and architects, any issue concerning contractors would not fit within the scope of the unresolved legal issue raised in the parties' pleadings. The second question asked whether the economic loss doctrine precluded tort claims against design professionals. That question, however, did not address the commercial aspect of the project, and thus, it was too broad. Consequently, we have reframed the federal court's two questions as one question. In so doing, we point out that, in exercising our discretion to answer certified questions, we nevertheless must constrain ourselves to resolving legal issues presented in the parties' pleadings. In that regard, we avoid answering academic or abstract matters that a certifying court may have included in posing its questions to this court. In restating the federal court's questions into one more precise question, it now fits within the three criteria outlined in *Volvo Cars. Id.* Accordingly, we answer it.

### The economic loss doctrine

The economic loss doctrine is a judicially created rule that primarily emanates from products liability jurisprudence. *Calloway v. City of Reno*, 116 Nev. 250, 257, 993 P.2d 1259, 1263 (2000), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241-44, 89 P.3d 31, 31-33 (2004). This court has explained that " '[t]he economic loss doctrine marks the fundamental boundary between con-

---

Nevada Society of Professional Engineers; ASFE/The Best People on Earth; the American Society of Civil Engineers; and the Nevada Section of the American Society of Civil Engineers.

tract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others.'" *Id.* at 256, 993 P.2d at 1263 (quoting Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis*, 40 S.C. L. Rev. 891, 894-95 (1989)). Applying the economic loss doctrine to accomplish its general purpose, this court has concluded that the doctrine bars unintentional tort actions when the plaintiff seeks to recover "purely economic losses." *See Local Joint Exec. Bd. v. Stern*, 98 Nev. 409, 411, 651 P.2d 637, 638 (1982). Nevertheless, as set forth below, exceptions to the doctrine apply in certain categories of cases when strong countervailing considerations weigh in favor of imposing liability. *See generally Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50 (1st Cir. 1985).

As indicated, for purposes of the certified question, the U.S. District Court has determined that any losses that Mandalay suffered were purely economic.[5] Thus, while we typically begin analyzing economic loss doctrine matters by ascertaining whether the damages are purely economic in nature, *Arco Prods. Co. v. May*, 113 Nev. 1295, 1297, 948 P.2d 263, 265 (1997), we need not undertake that analysis here. Accordingly, we proceed to consider whether the particular professional negligence claims at issue here are within the economic loss doctrine's scope.

Our answer begins with a discussion of the economic loss doctrine's purpose, and then we discuss the policy behind the doctrine. Next, we discuss the recognized exceptions to the economic loss doctrine. Finally, we apply our interpretation of the doctrine to the current case.

### The economic loss doctrine's purpose

The seminal Nevada decision concerning the economic loss doctrine is *Stern*, 98 Nev. 409, 651 P.2d 637. In *Stern*, we considered an action brought by MGM Grand Hotel employees against those involved in the hotel's design and construction to recover lost wages and employment benefits after a fire damaged the hotel. The plaintiffs in *Stern* sued under negligent interference with contractual relations and prospective economic advantage theories, among others. In *Stern*, we began our analysis by pointing out that purely economic losses are recoverable in actions for tortious interference with contractual relations or prospective economic advantage when the alleged interference is *intentional. Id.* at 411, 651 P.2d at 638. In that regard, we rejected the minority view that permitted recovery for

---

[5]This opinion is not intended to address any property damage-based claims Mandalay may have raised in the district court, as such claims are beyond the scope of the question addressed here.

*negligent* interference with economic expectancies under limited circumstances, stating that:

> [W]e believe the tests that have been developed to determine who should recover for negligent interference with contract or prospective economic advantage are presently inadequate to guide trial courts to consistent, predictable, and fair results. The foreseeability of economic loss, even when modified by other factors, is a standard that sweeps too broadly in a professional or commercial context, portending liability that is socially harmful in its potential scope and uncertainty. We therefore decline to adopt the minority view allowing such recovery.

*Id.* Thus, we focused on crafting a predictable, fair articulation of the economic loss doctrine.

With that focus in mind, we reasoned that allowing the plaintiffs to sue under a negligence theory for purely economic losses, without accompanying personal injury or property damage, would have defeated the primary purpose of the economic loss doctrine: "to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Id.* at 411, 651 P.2d at 638. We expressed our conclusion about the economic loss doctrine's application to negligence claims, stating that unless there is personal injury or property damage, a plaintiff may not recover in negligence for economic losses.[6] *Id.* at 410-11, 651 P.2d at 638. Applying the rule to the facts presented in *Stern*, we determined that, although the plaintiffs suffered financial injury, namely, lost wages, benefits, and union dues, they had no possessory or proprietary interest in the hotel property and they suffered no accompanying personal injuries as a result of the fire that would permit them to recover in tort. *Id.*; *see also Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927) (explaining the general rule that a party cannot recover in tort for its economic losses unless that party suffers an accompanying physical injury or damage to its property). Accordingly, we concluded that the eco-

---

[6]The full statement of the economic loss doctrine's scope in *Stern* provided that "absent privity of contract or an injury to person or property, a plaintiff may not recover in negligence for economic loss." 98 Nev. at 410-11, 651 P.2d at 638. Although that statement suggested that recovery was permitted for purely economic losses if the parties had a contractual arrangement, the doctrine has never been applied in that way and the law, including the cases to which *Stern* cites, does not support such a broad conclusion. In pointing out this misstatement in *Stern*, we also point out that, while privity of contract is not a proper legal criterion for allowing tort recovery for purely economic losses in and of itself, that does not mean that the presence of contractual privity between litigants universally prevents such recoveries.

nomic loss doctrine barred the employees from recovering under a negligence theory.[7] *Stern*, 98 Nev. at 411, 651 P.2d at 638.

While the doctrine generally provides that purely economic losses are not recoverable in tort absent personal injury or property damage, courts have made exceptions to allow such recovery in certain categories of cases, such as negligent misrepresentation and professional negligence actions against attorneys, accountants, real estate professionals, and insurance brokers. *See, e.g., Goodrich & Pennington v. J.R. Woolard*, 120 Nev. 777, 101 P.3d 792 (2004); *Hewitt v. Allen*, 118 Nev. 216, 43 P.3d 345 (2002); *Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp. 2d 874, 883-85 (N.D. Ill. 1999); *2314 Lincoln Park West Condo. v. Mann*, 555 N.E.2d 346, 353 (Ill. 1990). In determining whether an exception to the economic loss doctrine should be made to allow negligence-based claims against professionals who provide design-related services in the commercial property development or improvement process, we first examine the policy considerations underlying the doctrine and then any countervailing policy reasons that weigh against applying it.

*Policy considerations underlying the economic loss doctrine*

The economic loss doctrine draws a legal line between contract and tort liability that forbids tort compensation for "certain types of foreseeable, negligently caused, financial injury." *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 52 (1st Cir. 1985). The doctrine expresses the policy that the need for useful commercial economic activity and the desire to make injured plaintiffs whole is best balanced by allowing tort recovery only to those plaintiffs who have suffered personal injury or property damage. *Public Service Ent. Group v. Philadelphia Elec.*, 722 F. Supp. 184, 211 (D.N.J. 1989). And it has been reasoned that such useful commercial activity could be deterred if those involved in it were subject to tort liability. *Id.* Instead, when economic loss occurs as a result of negligence in the context of commercial activity, contract law can be invoked to enforce the quality expectations derived from the parties' agreement. *See Calloway v. City of Reno*, 116 Nev. 250, 260-61, 993 P.2d 1259, 1265-66 (2000) (determining, in the context of a residential property construction defect action, initiated before the pertinent portions of NRS Chapter 40 were enacted, that when a plaintiff seeks to recover its purely economic losses related to a construction

---

[7]*Stern* also addressed the plaintiffs' strict products liability theory of recovery, explaining that it had been widely held that recovery under such a theory was unavailable for purely economic losses. 98 Nev. at 411-12, 651 P.2d at 638. Strict products liability is not within the scope of the certified question we are answering here, and regardless, controlling precedent is clear on that point, so we do not further address it.

defect, such harm is properly addressed by the policies underlying contract, not tort, law).[8]

In addition to balancing economic activity incentives against providing compensation to negligence victims, the economic loss doctrine is driven by financial considerations. In that regard, the doctrine works to reduce the cost of tort actions, but still provides tort victims with a remedy because less expensive alternative forms of compensation, such as insurance, generally are available to a financially injured party. *See Barber Lines A/S*, 764 F.2d at 54-55 (pointing out that typically, a "financial" plaintiff is a business firm that usually will buy insurance that may compensate it for its "first party loss," while other victims may sue under tort principles if they suffered some physical harm to their person or property, or under contract principles if an agreement exists). Thus, when applied to foreclose tort liability at a certain point, the economic loss doctrine dispels the fear of creating victim compensation costs that are unnecessarily high, at least from an administrative standpoint. *Id.* at 55.

Another consideration behind the economic loss doctrine is balancing the disproportion between liability and fault. *Id.* To that end, cutting off tort liability at the point where only economic loss is at stake without accompanying physical injury or property damage "provides . . . incentives and disincentives to engage in economic activity or to make it safer." *Id.* On the other hand, imposing unbounded tort liability for pure financial harm could result in "incentives that are perverse," such as insurance premiums that are too expensive for the average economic actor to afford. *Id.* For those reasons, courts have been reluctant to impose tort liability for purely financial harm. *Id.*

*Exceptions to the economic loss doctrine*

Nevertheless, as pointed out above, exceptions to the economic loss doctrine exist in broad categories of cases in which the policy concerns about administrative costs and a disproportionate balance between liability and fault are insignificant, or other countervailing considerations weigh in favor of liability. For example, negligent misrepresentation is a special financial harm claim for which tort recovery is permitted because without such liability the law would not

---

[8]Subsequently, we addressed whether a residential property owner could assert a negligence claim in a construction defect action brought under NRS Chapter 40 when purely economic losses were at stake and determined that, notwithstanding our decision in *Calloway*, such a claim could be maintained if initiated under NRS 40.640. *See Olson v. Richard*, 120 Nev. 240, 89 P.3d 31 (2004) (creating a statutory right to sue for losses related to construction defects in residential properties).

exert significant financial pressures to avoid such negligence. *Id.* at 56. An exception also has been created for commercial fishermen, who generally are permitted to sue for economic losses as "favorites of admiralty" law. *Id.*

With regard to the particular type of claim at issue here, those jurisdictions that have made exceptions to the economic loss doctrine to permit tort-based claims against design professionals when only economic loss is at issue, reason that the economic loss doctrine does not apply to bar tort claims grounded on negligently rendered services. *See, e.g., McCarthy Well Co. v. St. Peter Creamery*, 410 N.W.2d 312 (Minn. 1987) (concluding that under Minnesota law, the economic loss doctrine barred tort actions only in cases governed by the Uniform Commercial Code and was thus not applicable in cases where the alleged negligence involved the performance of services rather than the sale of goods). Other courts have reasoned that tort claims against design professionals where only economic losses occurred are permissible when design professionals owe duties beyond the terms of the contract. *See Griffin Plumbing & Heating v. Jordan*, 463 S.E.2d 85 (S.C. 1995) (holding that the economic loss doctrine did not apply to the particular negligence claim against the engineer defendant, after concluding that an engineer owes a professional duty to the plaintiff arising separate and distinct from any contractual duties between the parties or with third parties); *Eastern Steel v. City of Salem*, 549 S.E.2d 266 (W. Va. 2001) (concluding that a contractor may recover purely economic damages in an action alleging professional negligence on the part of a design professional because such a professional owes a duty of care to a contractor due to the special relationship that exists between the two). Still other courts allow recovery on the basis that such claims are foreseeable. *See Ins. Co. of North America v. Town of Manchester*, 17 F. Supp. 2d 81, 84 (D. Conn. 1998).

*The economic loss doctrine applies to preclude Mandalay's professional negligence claim*

Guided by the doctrine's purpose—"to shield [defendants] from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable," *Local Joint. Exec. Bd. v. Stern*, 98 Nev. 409, 411, 651 P.2d 637, 638 (1982)—and, after contemplating the competing policy reasons set forth above, we conclude that the economic loss doctrine should apply to bar the professional negligence claim at issue here.

In the context of engineers and architects, the bar created by the economic loss doctrine applies to commercial activity for which contract law is better suited to resolve professional negligence claims. This legal line between contract and tort liability promotes

useful commercial economic activity, while still allowing tort recovery when personal injury or property damage are present. Further, as in this case, contracting parties often address the issue of economic losses in contract provisions.

Based on the same policy considerations that guide our decision here, other jurisdictions have reached the same conclusion. *See, e.g., Holden Farms, Inc. v. Hog Slat Inc.*, 347 F.3d 1055 (8th Cir. 2003) (determining that when a financial injury reflects disappointed expectations, negligent design claims are barred by the economic loss doctrine because contract law is better suited to the nature of the loss); *Maine Rubber Intern. v. Environ. Management Group*, 298 F. Supp. 2d 133 (D. Me. 2004) (concluding that negligent design claims present a breach of express or implied warranty issue, properly addressed by contract law); *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo. 2004) (holding that the economic loss doctrine barred the plaintiff's tort claim against an engineering firm because the parties' contracts defined the engineering firm's duties, and pointing out that policy considerations weighed against permitting tort and contract remedies to overlap, particularly in the construction industry, where it is important to maintain a precise allocation of risk secured by contract); *City Exp., Inc. v. Express Partners*, 959 P.2d 836 (Haw. 1998) (applying the economic loss doctrine to preclude negligence claims against design professionals based in part on the policy of promoting certainty and predictability in allocating risk so that future business activity is not impeded); *see also, e.g., Fireman's Fund Ins. v. SEC Donohue, Inc.*, 679 N.E.2d 1197 (Ill. 1997); *Prendiville v. Contemporary Homes, Inc.*, 83 P.3d 1257 (Kan. Ct. App. 2004); *Lempke v. Dagenais*, 547 A.2d 290 (N.H. 1988); *Floor Craft v. Parma Com. Gen. Hosp.*, 560 N.E.2d 206 (Ohio 1990); *Goose Creek Sch. Dist. v. Jarrar's Plumbing*, 74 S.W.3d 486 (Tex. App. 2002); *American Towers Owners v. CCI Mechanical*, 930 P.2d 1182 (Utah 1996); *Carlson v. Sharp*, 994 P.2d 851 (Wash. Ct. App. 1999); *1325 North Van Buren v. T-3 Group*, 716 N.W.2d 822 (Wis. 2006) (all forbidding negligence claims against design professionals when only economic loss was at stake).

We perceive no significant policy distinction that would drive us to permit tort-based claims to recover economic losses against design professionals, such as architects and engineers, who provided their professional services in the commercial property development and improvement process, when we have concluded that such claims are barred under the economic loss doctrine if brought against contractors and subcontractors involved in physically constructing improvements to real property. *See Calloway v. City of Reno*, 116 Nev.

250, 993 P.2d 1259 (2000).[9] The work provided by construction contractors or the services rendered by design professionals in the commercial building process are both integral to the building process and impact the quality of building projects. Therefore, when the quality is deemed defective, resulting in economic loss, remedies are properly addressed through contract law. *See id.*[10] In that regard, we point out that economic losses for which no tort action will lie generally involve a buyer's "disappointed economic expectations." *Sensenbrenner v. Rust, Orling & Neale*, 374 S.E.2d 55, 56-58 (Va. 1988). In the commercial property development and improvement process, design professionals' duties typically are prescribed by the parties' contract, and therefore, any duty breached arises from the contractual relationship only, which "necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement." *Id.* at 58.

While the loss alleged here arguably was foreseeable, we do not read the rule as necessarily being dependent on foreseeability notions. *See Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 52 (1st Cir. 1985). Instead, the economic loss doctrine cuts off tort liability when no personal injury or property damage occurred, with traditionally recognized exceptions for certain classes of claims. *Id.* at 55-56. Negligence claims against design professionals do not fall within those traditional exceptions, and we decline to make an exception here.

In this case, for purposes of the certified question, Mandalay suffered only economic loss without any attendant personal injury or property damage, and therefore, the economic loss doctrine bars Mandalay from proceeding with their negligence-based claims against Terracon. Thus, adhering to our general policy of applying

---

[9]We again point out that *Calloway* was not decided in the context of NRS Chapter 40, as the underlying action was initiated before the effective date of the pertinent portions of that chapter, and, at any rate, the discrepancies between *Calloway* and NRS Chapter 40 were resolved in *Olson v. Richard*, 120 Nev. 240, 89 P.3d 31 (2004). Regardless, our decision today in no way implicates NRS Chapter 40, as the property at issue here is not residential.

[10]In *Calloway*, we cited with approval *Casa Clara v. Charley Toppino and Sons*, 620 So. 2d 1244 (Fla. 1993), in which the Florida Supreme Court determined that the economic loss doctrine applied to foreclose tort-based claims in construction defect cases brought against construction contractors. 116 Nev. at 261, 993 P.2d at 1266. Notwithstanding *Casa Clara*, the Florida Supreme Court later refused to apply the economic loss doctrine to a negligence claim in a construction defect action brought against a design professional, after reasoning that Florida law allowed recovery of pure economic losses in the context of

the economic loss doctrine in a predictable and fair way, we answer the federal court's question affirmatively.

## CONCLUSION

We conclude that, in a commercial property construction defect action in which the plaintiffs seek to recover purely economic losses through negligence-based claims, the economic loss doctrine applies to bar such claims against design professionals who have provided professional services in the commercial property development or improvement process. Accordingly, we answer the U.S. District Court's certified question in the affirmative.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, and PICKERING, JJ., concur.

___

professional negligence claims of all kinds, including claims brought by those who were not a party to the original professional services contract. *Moransais v. Heathman*, 744 So. 2d 973 (Fla. 1999). Given the policy considerations that support restricting liability for certain types of foreseeable, negligently caused financial injury, we cannot agree with the Florida court's holding in *Moransais*, especially since the claims against the design professional in *Moransais* involved statutory negligence and negligent misrepresentation, issues that are not present here.