# TUTHILL FINANCE *v.* ARTHUR GREENLAW ET AL.
## (AC 18476)

Foti, Mihalakos and Spallone, Js.

Argued May 5—officially released December 5, 2000

*M. Dean Montgomery*, for the appellant-appellee (plaintiff).

*Hanon W. Russell*, with whom was *Peter L. Truebner*, for the appellees-appellants (defendants).

*Opinion*

FOTI, J. In this action, the plaintiff partnership, Tuthill Finance, has appealed and the defendants have cross appealed from the judgment of the trial court rendered in favor of the plaintiff on its two count complaint alleging negligent misrepresentation and breach of contract. The plaintiff contends that the court improperly (1) determined the date as of which the plaintiff's damages should be calculated, (2) determined the amount of the plaintiff's damages[1] and (3) granted the defendants' motion to strike the third count of the plaintiff's August 26, 1991 amended complaint, which alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The defendants, Arthur Greenlaw, Leonard D'Agostino and ABC America's Homebuying Consultants, Inc. (ABC), argue in their cross appeal that the court improperly discounted the value of the subject property to reflect an estimated two year delay in the time neces-

---

[1] See footnote 4.

sary to sell the lots. We reverse in part the judgment of the trial court.

The following facts are relevant to this appeal. After a trial to an attorney trial referee (referee) and with due consideration of the parties' motions filed after the submission of the referee's report, the court, in a memorandum of decision dated May 4, 1998, determined that the plaintiff was entitled to recover from the defendants $280,738 plus costs.

In essence, this case involves the calculation of damages in a dispute between a mortgage lender and real estate appraisers. The plaintiff is a partnership that makes subprime or equity loans to borrowers whose credit standing prevents them from qualifying for conventional mortgage loans. The defendants Greenlaw and D'Agostino are principals and officers of the defendant ABC, a real estate appraisal company.

In 1989, United Financial Funding (United), a mortgage broker, retained the defendants to appraise twelve unimproved lots in a subdivision in New Milford, each lot consisting of approximately one-half acre. The defendants submitted an appraisal to United indicating a value per lot of approximately $65,000 for a total of $715,000. In reliance on the appraisals, the plaintiff loaned $315,000 to Wilfred Megin, who gave to the plaintiff as security for the loan a mortgage that encumbered all twelve lots.

The type of loan made by the plaintiff does not rely on the credit of the borrower. It relies exclusively on the equity in the borrower's mortgaged premises. The individual defendants, Greenlaw and D'Agostino, were disclosed agents of the defendant ABC. Megin applied to United for a mortgage loan. United forwarded the application to the plaintiff as a potential mortgagee. The defendants knew that their appraisal furnished to United in March, 1989, would be forwarded to potential

mortgagees. The defendants, whose appraisal was of eleven lots, nevertheless indicated that twelve lots were worth a total of $788,000. The plaintiff's loan to Megin was for one year at an interest rate of 18 percent. The loan of $315,000, made on the basis of the appraisal, was 40 percent of the appraised value. The actual value of the twelve lots was $230,000. The defendants knew or were charged with the knowledge that the mortgagee, in making an asset-based loan, would rely on the appraisal and that the defendants were responsible for its accuracy. There were twelve lots mortgaged to the plaintiff, but only eleven lots were appraised by the defendants. The plaintiff accepted a mortgage on lot 20 without an appraisal as the result of an error in which lot 20 was confused with lot 24. The appraisal submitted by the defendants failed to include information that the lots had substantial rocky ledges and steep slopes, that they were nonconforming as to area, that only four of the lots could be built on because they had to be combined to conform to the requirements of an R-80 zone and that there were comparable sales that the defendants failed to include in their appraisal.

After Megin defaulted, the plaintiff commenced a foreclosure action against him in December, 1989. A judgment of strict foreclosure was rendered against Megin resulting in title vesting in the plaintiff on September 1, 1994. Subsequently, the plaintiff obtained a deficiency judgment against Megin in the amount of $604,942.16 as of the date title vested, representing the debt interest and related expenses, less $90,000 attributed to the value of the foreclosed premises.

The referee's conclusions, which the court accepted and adopted, were that (1) the plaintiff proved that it sustained a monetary loss caused by the negligence of the defendants in that they failed to conform to the standard of care required of real estate appraisers, (2) the defendants warranted that their appraisal could be

relied on by a mortgagee, (3) the plaintiff had a right to and did rely exclusively on the defendants' appraisal in making the loan to Megin and not on Megin's creditworthiness, (4) the parties intended that the plaintiff would be a third party beneficiary of the contract between ABC and United and as such had the right to enforce that contract, (5) the value of the lots had to be discounted from $230,000 to $155,000 to reflect the period of two years to market the lots, (6) the defendants failed to prove their special defense of contributory negligence because the plaintiff had the right to rely on the appraisal without conducting an independent investigation, (7) the plaintiff mitigated damages by promptly starting a foreclosure action and proceeding in a reasonably expeditious fashion thereafter, (8) damages to the plaintiff are to be measured at the time the defendants' appraisal was submitted and the loan made, and not as subsequent events unfurled, including a change in the market value of the collateral, because the plaintiff should know that many mortgagors are successful in "dragging out" foreclosure proceedings and (9) the plaintiff was damaged in the amount of $280,373.[2]

After due consideration of the defendants' motions to correct and both parties' exceptions to the referee's report, the court rendered judgment in favor of the plaintiff against the defendants for $280,738 plus taxable costs. This appeal followed.

[2] The plaintiff's damages were calculated as follows: The difference between what the actual loan would have been if the defendants had accurately reported the true value of the lots, and if the plaintiff had maintained the same 40 percent loan to collateral ratio, which is $62,000—$62,000 deducted from $315,000, the amount of the loan to Megin, is $253,000. That amount was reduced by $21,083 to $231,917 because lot 20 was not appraised and further reduced by the value of the land acquired by the plaintiff, excluding lot 20 ($82,958), to an amount of $148,959. Added to that was $131,373, on the basis of General Statutes § 37-3a, equaling 10 percent interest running from the date of the loan to Megin to the date of judgment for a total of $280,738.

## I

In its first claim, the plaintiff contends that the court improperly determined the date from which damages should be calculated. We agree and therefore reverse the judgment as to the plaintiff's appeal and remand the case to the trial court for a redetermination of damages.

The court fixed June 29, 1989, as the date on which the damages to the plaintiff should be calculated. The referee concluded that the lending date, June 29, 1989, which was the date of the completion of the appraisers' task and after which the effect of their completed work was no longer within their purview and control, equitably, was the proper date to be used for the determination of damages. We disagree.

The appraiser was required to perform a particular duty, which was to provide a lender with an appraisal of the premises used as security for a loan. While we agree that the appraiser was not an investor with the plaintiff and not responsible for any losses due to the default of a third party, and that the precipitating event that led to the enhanced losses by the plaintiff was the breach of contract by the borrower, Megin, when he defaulted on his loan, we cannot conclude that the subsequent mortgage foreclosures, bankruptcy and delays accruing after the borrower's default had no relationship to the defendants' appraisal. Although the plaintiff chose to make a high risk loan that was not based on the creditworthiness of the borrower, damages assessable against the defendants cannot be limited by the plaintiff's loss as of the date of the making of the loan, the date the appraiser's work was completed.

Although our standard of review of the court's findings of fact is whether they are "clearly erroneous," the extent of loss for which an appraiser should be legally responsible is a question of law, subject to plenary review. *First Federal Savings & Loan Assn. of Roches-*

*ter* v. *Charter Appraisal Co.*, 247 Conn. 597, 603, 724 A.2d 497 (1999).

The parties agree that the purpose of the appraisal for a lender is that it is intended to demonstrate that the property provided adequate security for the amount of the mortgage loan, rather than to assure the bank that the borrowers would not default. In this action, the plaintiff seeks damages occurring when and after the value of the property is applied to satisfy the judgment following strict foreclosure. We apply and accept the same rationale as was approved by our Supreme Court in *Charter Appraisal Co.*, which is that the calculation of damages should be measured and determined from the time that title vested as determined in the foreclosure proceeding.[3] Id., 611. We must therefore conclude that the court's acceptance of the referee's finding that the date of the making of the mortgage was the date from which the plaintiff's damages are to be measured is an incorrect date as a matter of law.[4] We are not unaware that the referee made a specific finding that the plaintiff did not prove that its postdefault damages were proximately caused by the defendants' negligence and breach of contract.

The plaintiff has the burden of proving that the defendants' actions were the proximate cause of its losses. Id., 608. Although the duty of the defendants cannot be extended to protect the plaintiff from loss arising from a subsequent general decline in real estate values; see id., 607; losses proven to have been sustained that are within the scope of risk created by the negligently conducted appraisal are the defendants' responsibility. It

[3] Judgment was rendered in this matter on May 4, 1998; the decision in *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, supra, 247 Conn. 597, was published on February 2, 1999.

[4] Because we conclude as we do, the plaintiff's second issue on appeal, concerning the new calculation of damages, will be determined by the trial court on remand.

is the defendants' burden of proving that the plaintiff failed to take reasonable efforts to mitigate its damages. See id., 615.

Compensatory damages in this type of action are awarded to restore the plaintiff to the position it would have been in had the wrong not been committed. Such calculation of damages in this matter is neither speculative nor remote.

## II

The plaintiff next claims that the court improperly granted the defendants' motion to strike the third count of its amended complaint alleging that the defendants violated CUTPA. "After a trial court has sustained a motion to strike a complaint or a portion of the complaint, the plaintiff has two options. He may amend his pleading, or he may stand on his original pleading, allow judgment to be rendered against him, and appeal the sustaining of the [motion to strike]. . . . The choices are mutually exclusive." (Internal quotation marks omitted.) *P & L Properties, Inc.* v. *Schnip Development Corp.*, 35 Conn. App. 46, 49, 643 A.2d 1302, cert. denied, 231 Conn. 913, 648 A.2d 155 (1994). Following the granting of the motion to strike on October 28, 1991, the plaintiff neither moved for judgment on the stricken count nor attempted to reserve its appeal pursuant to Practice Book § 4002 (a).[5] Because the plaintiff did noth-

[5] At the time of the granting of the defendants' motion to strike, Practice Book § 4002 (a) provided in relevant part: "A judgment disposing of certain of the issues between the parties or of part or all of the issues between some of them in such a manner as to be final but not terminating the litigation . . . may be treated as a final judgment for the purpose of an appeal by the party or parties against whom the judgment is rendered, notwithstanding that the cause remains undisposed of on other issues or as to other parties; *but the party or parties may, at their option, reserve their appeal until the final judgment is rendered which disposes of the cause for all purposes and as respects all parties; provided, in such a case, that notice of such reserving of appeal shall be filed in the trial court accompanied by a certification that a copy thereof has been served on each counsel of record in accordance with the provisions of Sec. 120 within*

ing to pursue its unreserved appeal on the granting of the motion to strike, it waived the right to claim on appeal that the granting of the motion was improper. See, e.g., *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 74, 700 A.2d 655 (1997); *P & L Properties, Inc.* v. *Schnip Development Corp.*, supra, 49.

### III

The defendants have filed a cross appeal, claiming that the court improperly discounted the actual fair market value of the property as of June 29, 1989, the date the loan was made, by discounting it over two years, the estimated time necessary to sell the lots. Because we have concluded that the plaintiff's damages, in this case, are measured not as of the date of the making of the loan, but rather at the time that title vested, we find it unnecessary to address this claim and dismiss the defendants' cross appeal.

The judgment is reversed on the plaintiff's appeal only as to the trial court's calculation of damages and the matter is remanded for further proceedings to recalculate the award of damages consistent with this opinion. The defendants' cross appeal is dismissed.

In this opinion the other judges concurred.

*twenty days after issuance of notice of the rendition of the judgment disposing of part of the issues.*" (Emphasis added.)