OPINION
 

 Per Curiam:
 

 Goodrich & Pennington Mortgage Fund, Inc., appeals from a district court judgment awarding it damages in connection with a negligent appraisal performed by J.R. Woolard, Inc. Goodrich contends that the district court’s award failed to include the entirety
 
 *779
 
 of the damages proximately caused by Woolard’s negligence. We affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Goodrich loaned John Brown and Thelma Wilson (the Borrowers) the sum of $210,000 for the purchase of what was represented as a completed private residence. Goodrich’s agreement to fund this loan was based in large part on a defective appraisal report prepared by Woolard that failed to note construction deficiencies and that the residence was substantially incomplete. The report appraised the property at $280,000.
 
 [1]
 
 The Borrowers defaulted on the loan after making only two payments, and Goodrich commenced foreclosure proceedings by recording a notice of default and election to sell in a nonjudicial foreclosure sale.
 

 The Borrowers filed for Chapter 13 bankruptcy protection the day before the scheduled trustee’s sale, automatically staying liquidation. Goodrich retained counsel to obtain relief from the stay. After the bankruptcy court dismissed the Borrowers’ case without a discharge of liability, Goodrich purchased the property for $200,000. Upon taking possession, Goodrich identified extensive deficiencies that Woolard failed to note in the appraisal report and certificate. Goodrich then listed the property for resale for $210,990. The property eventually sold for $190,000, from which Goodrich received net proceeds of $171,733.89.
 

 Goodrich filed a complaint in district court against Woolard for professional negligence, breach of a statutory duty to disclose material facts, and negligent misrepresentation. At the ensuing bench trial, Paul Pennington, Goodrich’s president and chairman of the board, testified that Goodrich was purely a mortgage lender, that Goodrich would never have funded the loan had it known the home was incomplete because it did not fund construction loans, and that it lost market opportunities to make other loans with the proceeds at a similar rate. James Woolard admitted at trial that the appraisal report misrepresented the state of completion of the property and also admitted that Goodrich properly relied upon the report in determining whether to fund the loan.
 

 Goodrich produced the following evidence of damages:
 

 Principal balance of loan on the Property $208,761.20
 

 Pre-foreclosure accrued interest 38,793.08
 

 Post-foreclosure interest to 12/28/2000 15,530.69
 

 Pre-foreclosure insurance 2,975.34
 

 Post-foreclosure insurance 1,355.12
 

 
 *780
 
 Foreclosure fees 3,284.48
 

 Republication and reposting fees 310.00
 

 Attorneys’ fees in borrowers’ bankruptcy 1,497.00
 

 Brokers’ price opinion fees 220.00
 

 Costs for eviction proceedings 500.00
 

 Costs for moving, storage and transportation 1,059.00 [Fee to mortgage broker 6.300.001
 

 Subtotal [280,585.91]
 

 Less sales proceeds (171,733.89)
 

 Total Claimed Damages (excluding attorney $[108,852.02] fees & costs and pre-judgment interest)
 

 In awarding judgment in favor of Goodrich, the district court found that the appraisal report failed to disclose the incomplete construction of the home and that Goodrich was unaware of the deficient condition of the property. The court also found that, in agreeing to fund the Borrowers’ loan, Goodrich
 

 relied upon the $280,000.00 value attributable to the Property in the Appraisal, and upon the fact that the Appraisal indicated that the Property was completed except for floor coverings and front landscaping.
 
 [2]
 

 The district court then awarded Goodrich $37,027.31 in damages, the difference between the net sales proceeds and the loan balance upon default.
 
 [3]
 
 In this, the court limited its proximate cause findings to the impaired value of the security for the loan. It therefore narrowed the scope of recoverable damages by drawing a distinction between general and proximate causation, rejecting those sums Goodrich generally claimed “it would not have had to expend but for Woolard’s negligence.’ ’ More specifically, the district court concluded that
 

 [T]he risk of [the Borrowers] defaulting on the Loan was an assumed and ordinary risk to [Goodrich] in its normal course of business, and that damages from [the Borrowers’] default were not proximately caused by Woolard’s negligence. Despite testimony that [Goodrich] would not have funded the Loan but for its reliance on Woolard’s inaccurate, misleading and negligent appraisal, the Court concludes that [Goodrich] relied upon the Appraisal more to preserve its position in the Property than to protect against losses in the event of a default.
 

 
 *781
 
 Additionally, the district court awarded Goodrich prejudgment interest. Goodrich filed this timely appeal, claiming that the damage award was insufficient.
 

 DISCUSSION
 

 Woolard concedes that the appraisal misrepresented the value and condition of the real property that secured the loan, that Goodrich was entitled to rely on the representations, and that Woolard’s negligent misrepresentations induced Goodrich to consummate the loan transaction. Accordingly, Woolard is subject to liability for the pecuniary loss proximately caused by Goodrich’s justifiable reliance upon the false information.
 
 [4]
 
 While Woolard’s duty may not extend to losses arising from a subsequent downturn in the real estate market, “losses proven to have been sustained that are within the scope of risk created by the negligently conducted appraisal are the defendants’ responsibility.”
 
 [5]
 
 This appeal concerns the extent of that liability.
 

 Goodrich argues that the district court’s “impairment of security” measure of damages was insufficient and did not adequately compensate it for all losses proximately caused by Woolard’s negligent misrepresentations. First, Goodrich asserts that the district court’s award of $37,027.31, based upon impairment of security, was internally inconsistent because it exceeded the difference between the principal balance of the loan and the actual value of the property as evidenced by the sale price. Specifically, the loan balance ($208,761.20) less the resale price ($190,000) is $18,761.20. In this, Goodrich correctly points out that the district court’s award, which was based upon net proceeds of the resale, in fact, included additional costs such as the broker’s commission. Goodrich contends that, to be consistent, the district court should have also awarded Goodrich all other costs actually incurred in its attempt to recoup the principal balance of the loan. Second, Goodrich argues that the district court’s conclusion only considered one aspect of Woolard’s duty to Goodrich: the duty to accurately value the property. Goodrich posits that Woolard also breached a second duty by falsely stating that the property was complete. Thus, Goodrich argues that, because it would never have funded the loan had it known the true condition of the property, the district court should have awarded all damages associated with the loan, including lost interest. Third, Goodrich asserts that, to fully compensate Goodrich for its losses, a “benefit-of-the-bargain” measure of damages should govern the resolution of this matter.
 

 
 *782
 
 In response, Woolard argues that the district court’s out-of-pocket damage award correctly and fully compensated Goodrich for its losses proximately caused by the negligent appraisal. More particularly, Woolard asserts that, because Goodrich relied upon the appraisal report to consider whether its collateral provided adequate security for the loan, Goodrich’s compensable losses were limited to the difference between the principal loan balance and the amount Goodrich ultimately received from the post-foreclosure sale of the property.
 

 As noted, the district court adopted Woolard’s theory of proximate cause. On appeal, we will uphold a district court’s factual findings if supported by substantial evidence, unless they are clearly erroneous.
 
 [6]
 

 Formula for computing damages for negligent misrepresentation
 

 Many jurisdictions that have considered the appropriate standard of damages for negligent-misrepresentation causes of action have adopted damage formulations based upon out-of-pocket damages.
 
 [7]
 
 We join those jurisdictions and embrace the notion that damage awards in connection with negligent-misrepresentation cases include (1) the difference between the value of what the plaintiff received in the induced transaction and the value given for it,
 
 [8]
 
 and (2) pecuniary loss sustained in consequence of the plaintiff’s reliance upon the false representation.
 
 [9]
 

 Goodrich asks us to adopt a benefit-of-the-bargain formula for damages. This court has defined benefit-of-the-bargain damages in
 
 *783
 
 the fraud context as “the value of what [the plaintiff] would have received had the representations been true, less what he actually received.”
 
 [10]
 
 This damage measure is akin to damages available in a contract action for breach of warranty.
 
 [11]
 
 The benefit-of-the-bargain rule is a punitive measure which “compels [a] party guilty of fraud to make good his or her representations, and under its operation, the parties are placed in the same position as if the contract and representations had been fully performed.”
 
 [12]
 

 We reject this damage formulation in favor of the out-of-pocket formula for cases of negligent misrepresentation. In
 
 BDO Seidman, LLP
 
 v.
 
 Mindis
 
 Acquisition,
 
 [13]
 
 a case with facts similar to those presented here, the Georgia appellate court drew the following distinction between the two formulas:
 

 The out-of-pocket measure of damages . . . seeks to place the injured party in the same place it would have been had there been no injury or breach of duty. ... A benefit-of-the-bargain standard gives the wronged party the benefit of the contract he made, but it also ensures that the fraudfeasor does not enjoy any fruits of his misdeeds.
 
 The dual purposes of this standard have no application in a negligent misrepresentation case where there was no privity because the defendant was not a party to the transaction and thus, has not been unjustly enriched.
 

 [14]
 

 We agree with the Georgia court in drawing a distinction between fraud and negligence for the purpose of awarding damages, particularly when the defendant, for consideration, negligently performs a service, which serves to induce the plaintiff into a failed or flawed transaction with a third party. Here, the district court found no fraud in connection with the appraisal. Further, Woolard was not a party to the failed loan transaction and was not, as in the context of a fraud committed as between parties to a transaction, unjustly enriched. Accordingly, we hold that the out-of-pocket formula applies in this instance.
 

 
 *784
 

 Proximate causation
 

 As noted, an award of damages in a negligent-misrepresentation case includes the actual loss from the transaction plus consequential damages sustained as a proximate result of the plaintiff’s reliance on the misrepresentation. Here, the district court restricted its award to damages sustained in connection with impairment of the security for the loan. As noted in the margin below, this award included a component of consequential damages.
 
 [15]
 
 Thus, we turn to the question of whether the district court erred in refusing an award of further consequential damages under a proximate-cause analysis.
 

 [Headnote 5]
 

 The
 
 Restatement
 
 defines “consequential damages” as those “of a kind that might reasonably be expected to result from reliance upon the misrepresentation.”
 
 [16]
 
 Proximate causation, as determined by the district court, is a subset of “cause in fact” or “actual causation.” As we stated in
 
 Dow Chemical Co.
 
 v. Mahlum:
 
 [17]
 

 Causation consists of two components: actual cause and proximate cause. To demonstrate actual cause ... , the [plaintiff must] prove that, but for the [product] the [plaintiff’s damages] would not have occurred. The second component, proximate cause, is essentially a policy consideration that limits a defendant’s liability to foreseeable consequences that have a reasonably close connection with both the defendant’s conduct and the harm which that conduct created.
 
 [18]
 

 More particularly, we define proximate cause as “‘any cause which in natural [foreseeable] and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred.’ ”
 
 [19]
 

 Woolard concedes that the district court properly awarded impairment of security damages. However, the valuation of the property was not the only negligent inducement in the appraisal for Goodrich’s funding of the loan. Additionally, the condition of the property as complete was grossly, albeit nonfraudulently, represented. Thus, beyond impairment of security damages, the district court could have properly awarded foreclosure expenses and loss of
 
 *785
 
 interest in the event it factually determined that the condition of the property rendered default on the loan inevitable;
 
 i.e.,
 
 that the total loan package, including the secondary financing, was approved by the lenders based upon an inflated value, and completion of the property by the Borrower was not financially feasible. In this, the district court could have considered that the weak credit history of the Borrowers made foreclosure a distinct and foreseeable possibility. Thus, the district court could have awarded damages sustained in connection with the foreclosure, including loss of interest between default and repurchase, in the event it found that the appraisal was the proximate cause of the foreclosure as well as the proximate cause of the impairment of Goodrich’s security.
 

 Here, however, the parties agree that the loan was clearly high-risk, given that the stipulated interest rate exceeded twelve percent. Accordingly, the district court could have reasonably determined that the risk of foreclosure was accounted for by the higher rate of interest. Thus, while the appraisal misrepresented the property’s value and state of completion, the district court could properly conclude on this evidence that the appraisal was relied upon solely to preserve the value in the collateral, not to account for the possibility of default and foreclosure.
 
 [20]
 

 In light of these permutations, we cannot conclude that the district court clearly erred in determining that the purpose of the appraisal report was to provide information pertinent to whether the collateral for the loan was adequate in the event of foreclosure,
 
 i.e.,
 
 that the purpose of the appraisal was to protect Goodrich’s position in the collateral, not to provide information concerning the likelihood of a default by the Borrowers, necessitating foreclosure.
 

 CONCLUSION
 

 The district court properly used an out-of-pocket damage-recovery theory to award Goodrich its damages sustained as a result of Woolard’s negligence. Further, we cannot conclude that the district court clearly erred in its refusal to award Goodrich its lost interest and other claimed damages incident to the foreclosure.
 
 [21]
 
 Accordingly, we affirm the district court’s judgment.
 

 [1]
 

 The sales price of the property was $280,000. The sellers of the property partially financed the sale with a second mortgage.
 

 [2]
 

 Goodrich withheld $1,800 from the initial distribution of loan proceeds for installation of floor coverings.
 

 [3]
 

 I.e., the principal loan balance of $208,761.20, less $171,733.89, the sum Goodrich received from resale of the property after deducting fees, commissions and other sales costs.
 

 [4]
 

 See Restatement (Second) of Torts
 
 § 552 (1977);
 
 see also Tuthill Finance v. Greenlaw,
 
 762 A.2d 494, 498 (Conn. App. Ct. 2000).
 

 [5]
 

 Tuthill,
 
 762 A.2d at 498.
 

 [6]
 

 Edwards Indus.
 
 v.
 
 DTE/BTE, Inc.,
 
 112 Nev. 1025, 1031, 923 P.2d 569, 573 (1996).
 

 [7]
 

 See Jenkins
 
 v.
 
 KLT, Inc.,
 
 308 F.3d 850 (8th Cir. 2002);
 
 Utah Foam Products Co.
 
 v.
 
 Upjohn Co.,
 
 154 F.3d 1212 (10th Cir. 1998);
 
 Martha Graham School
 
 v.
 
 Marthaz Graham Center,
 
 224 F. Supp. 2d 567 (S.D.N.Y. 2002);
 
 Standard Chartered PLC v. Price Waterhouse,
 
 945 P.2d 317 (Ariz. Ct. App. 1996);
 
 Hensley
 
 v.
 
 McSweeney,
 
 109 Cal. Rptr. 2d 489 (Ct. App. 2001);
 
 BDO Seidman, LLP v. Mindis Acquisition,
 
 578 S.E.2d 400 (Ga. 2003);
 
 Danca
 
 v.
 
 Taunton Sav. Bank,
 
 429 N.E.2d 1129 (Mass. 1982);
 
 B.F. Goodrich Co.
 
 v.
 
 Mesabi Tire Co.,
 
 430 N.W.2d 180 (Minn. 1988);
 
 Burke v. Harman,
 
 574 N.W.2d 156 (Neb. Ct. App. 1998);
 
 First Interstate Bank of Gallup v. Foutz,
 
 764 P.2d 1307 (N.M. 1988);
 
 Janda v. Brier Realty,
 
 984 P.2d 412 (Wash. Ct. App. 1999);
 
 Gyldenvand
 
 v.
 
 Schroeder,
 
 280 N.W.2d 235 (Wis. 1979).
 

 [8]
 

 See Hanneman v. Downer,
 
 110 Nev. 167, 173, 871 P.2d 279, 283 (1994);
 
 Random
 
 v.
 
 Turk,
 
 86 Nev. 123, 130, 466 P.2d 218, 223 (1970).
 

 [9]
 

 See Restatement (Second) of Torts
 
 § 552B (1977).
 

 [10]
 

 Collins v. Burns,
 
 103 Nev. 394, 398, 741 P.2d 819, 822 (1987).
 

 [11]
 

 Kuwaiti Danish Computer
 
 v.
 
 Digital Equip.,
 
 781 N.E.2d 787, 796 n.9 (Mass. 2003);
 
 Prosser and Keeton on Torts
 
 768 (5th ed. 1984);
 
 see also
 
 NRS 104.2714(2) (“The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.”).
 

 [12]
 

 Lightning Litho, Inc.
 
 v.
 
 Danka Industries,
 
 776 N.E.2d 1238, 1242 (Ind. Ct. App. 2002).
 

 [13]
 

 578 S.E.2d 400.
 

 [14]
 

 Id.
 
 at 401-02 (emphasis added).
 

 [15]
 

 See infra
 
 note 20.
 

 [16]
 

 Restatement (Second) of Torts
 
 § 549 cmt. d (1977).
 

 [17]
 

 114 Nev. 1468, 970 P.2d 98 (1998).
 

 [18]
 

 Id.
 
 at 1481, 970 P.2d at 107 (citations omitted).
 

 [19]
 

 Taylor
 
 v.
 
 Silva,
 
 96 Nev. 738, 741, 615 P.2d 970, 971 (1980) (quoting
 
 Mahan
 
 v.
 
 Hafen,
 
 76 Nev. 220, 225, 351 P.2d 617, 620 (1960)).
 

 [20]
 

 The district court’s award based upon the net resale proceeds included an award of consequential damages, to wit: real estate commissions and costs of resale. These consequential damages were related to recapturing the value of the security and thus were part and parcel of the impairment of the security. The failure to award expenses in connection with the foreclosure itself, including the bankruptcy costs did not result in an inconsistent award.
 

 [21]
 

 See, e.g., Brier Realty,
 
 984 P.2d at 415-16 (holding that purchaser could not, in a negligent-misrepresentation action, recover for lost profits he allegedly would have recovered had real estate agent properly represented cost of subdivision of property).