140 Nev., Advance Opinion 58

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| GAVIN DE BECKER, AN INDIVIDUAL; AND BRIAN DE BECKER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HAL DE BECKER, DECEASED, Appellants, vs. UHS OF DELAWARE, INC., D/B/A DESERT SPRINGS HOSPITAL MEDICAL CENTER, A PENNSYLVANIA CORPORATION; KHUONG T. LAM, D.O., AN INDIVIDUAL; AND SHFALI BHANDARI, M.D., AN INDIVIDUAL, Respondents. | No. 85968   FILED SEP 19 2024 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY ___ CHIEF DEPUTY CLERK |

Appeal from a district court order dismissing a medical malpractice/tort action. Eighth Judicial District Court, Clark County; Veronica Barisich, Judge.

*Affirmed.*

Bertoldo Baker Carter Smith & Cullen and Cliff W. Marcek, Las Vegas; JW Howard Attorneys, Ltd., and Scott J. Street, Pasadena, California, for Appellants.

Hall Prangle & Schoonveld, LLC, and Kenneth M. Webster and Zachary J. Thompson, Las Vegas, for Respondent Desert Springs Hospital Medical Center.

Hutchison & Steffen, PLLC, and David J. Mortensen, Courtney Christopher, and Derek Linford, Las Vegas, for Respondents Khuong T. Lam, D.O., and Shfali Bhandari, M.D.

24-34560

BEFORE THE SUPREME COURT, STIGLICH, PICKERING, and PARRAGUIRRE, JJ.

## *OPINION*

By the Court, STIGLICH, J.:

In this opinion, we revisit several issues surrounding claims for professional negligence, and we address, as a matter of first impression, whether a state law claim is barred by the federal Public Readiness and Emergency Preparedness Act (PREP Act). Specifically, we revisit the requirements for expert affidavits under NRS 41A.071 and the dismissal of complaints with deficient expert affidavits. We confirm that a complaint that lacks an expert affidavit satisfying NRS 41A.071 cannot be amended to cure the deficiency and that the unsupported professional negligence claim must be dismissed. Moreover, we hold that the PREP Act bars a claim alleging a failure to obtain informed consent before administering a covered countermeasure.

Because appellants Gavin de Becker, individually, and Brian de Becker, as personal representative of the Estate of Hal de Becker, filed an expert declaration that was deficient as to the defendant doctors, dismissal of their professional negligence claim as to the doctors was proper. And although the claims against the defendant hospital were supported by a sufficient expert declaration, the claims were nevertheless barred by the PREP Act because the allegation that the hospital failed to obtain consent to administer remdesivir was related to the administration of a covered countermeasure. Accordingly, we affirm the dismissal of the complaint.

 

## FACTS AND PROCEDURAL HISTORY

In 2021, Hal de Becker contracted COVID-19, and his personal physician began administering ivermectin to him.[1] The de Beckers alleged that Hal responded favorably to it. Subsequently, Hal was admitted to respondent Desert Springs Hospital Medical Center to ensure that he received constant medical attention should his symptoms worsen. Between May 9 and 12, 2021, respondent Dr. Khuong T. Lam was the attending physician who oversaw and was responsible for Hal's treatment. Respondent Dr. Shfali Bhandari assumed that role on May 11, 2021.

Attending doctors and hospital administrators at Desert Springs abruptly stopped Hal's ivermectin treatment. Without consent from or consultation with Hal, Hal's family, or Hal's personal physician, the attending doctors managing Hal's care instead treated him with remdesivir. The de Beckers alleged that one doctor at the hospital approved the requested ivermectin, but an unspecified person at the hospital overruled that decision and forbade the treatment without explanation. During this time, a lawyer representing Hal and his family attempted to address the matter with hospital executives but received no response. The doctors responsible for Hal's treatment also refused to respond to correspondence from Hal's son and surrogate Gavin and from Hal's family. The de Beckers alleged that Hal's condition deteriorated when ivermectin treatment was abruptly interrupted, and within hours of being discharged by the hospital, Hal died.

---

[1]These factual allegations are drawn from the complaint and expert declaration and deemed true for purposes of this appeal. *See Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

 

The de Beckers sued Dr. Lam, Dr. Bhandari, and Desert Springs, alleging claims of negligence, professional negligence, and wrongful death and seeking punitive damages.[2] The de Beckers alleged that the attending doctors and hospital were aware of scientific reports suggesting ivermectin's effectiveness. Yet, even after the doctors and hospital had exhausted all treatments that they had selected, after they were certain Hal would soon die, and after they suggested Hal be moved to hospice care, the doctors and hospital continued to refuse to treat Hal with ivermectin. The de Beckers alleged that the doctors and hospital made treatment decisions based on political or media narratives. Additionally, they alleged that no medical professional had reviewed Hal's medical history, consulted with Hal's family or physician, informed Hal or his surrogate of all available treatment options, or made a professional judgment about how to treat him.

The de Beckers' complaint included an expert declaration made under penalty of perjury in lieu of an NRS 41A.071 affidavit. *See Baxter v. Dignity Health*, 131 Nev. 759, 762, 357 P.3d 927, 929 (2015) ("The 'affidavit' can take the form of either 'a sworn affidavit or an unsworn declaration made under penalty of perjury.'" (quoting *Buckwalter v. Eighth Jud. Dist. Ct.*, 126 Nev. 200, 202, 234 P.3d 920, 922 (2010))). The expert described scientific findings about the use of ivermectin and remdesivir to treat COVID-19. The expert opined that ivermectin is extremely beneficial in treating COVID-19 but remdesivir has limited, if any, benefit in treating

---

[2]The de Beckers also sued Dr. Amir Z. Qureshi, alleging that he oversaw Hal's treatment throughout his stay at the hospital. Dr. Qureshi, however, was dismissed from the action, and that dismissal is not challenged on appeal.

COVID-19 and remdesivir's benefit is substantially outweighed by its potential serious side effects. The expert indicated that he reviewed the complaint and some of the medical records from Desert Springs. He concluded that the physicians who treated Hal refused to treat him with ivermectin despite pleas from Hal through his surrogate, Hal's family, and Hal's personal physician and instead treated him with remdesivir without consent. The expert concluded that the physicians violated the doctrine of informed consent, that the physicians' decisions fell below the standard of care, and that the physicians' and hospital's failure to meet standards of care resulted in Hal's death.

Drs. Lam and Bhandari, collectively, and Desert Springs, individually, moved to dismiss.[3] The district court determined that the crux of the de Beckers' allegations was twofold: (1) Hal was given remdesivir rather than ivermectin, and (2) Drs. Lam and Bhandari failed to communicate with Hal, his family, and his personal physician regarding the course of Hal's treatment. The district court dismissed the de Beckers' claims against Drs. Lam and Bhandari, finding that the Public Readiness and Emergency Preparedness Act (PREP Act) barred the claims concerning the use of remdesivir rather than ivermectin to treat Hal. It found the doctors' decisions to treat Hal with remdesivir and not to consult Hal, Hal's family, or Hal's personal physician all fell under the broad protection of the PREP Act. The district court also found that the de Beckers' ordinary negligence claim was actually a claim for professional negligence. Further,

---

[3]The doctors' motion to dismiss was based on the de Beckers' original complaint. Although that complaint was subsequently amended, the district court found that it could assess the doctors' motion to dismiss because there were only a few differences between the two complaints and those differences did not affect its analysis.

the district court found that even if the de Beckers' claims against the doctors were not barred by the PREP Act, the affidavit requirement under NRS 41A.071 for professional negligence claims was not met because the assertions therein were general and not specifically delineated as to each doctor. Therefore, the district court dismissed the complaint as to the doctors.

As to Desert Springs, the district court dismissed those claims as well, finding that the hospital asserted essentially the same arguments against the de Beckers' claims that the doctors did. The district court also found that the de Beckers' allegation that Desert Springs refused to prescribe ivermectin due to media narratives alleged professional negligence rather than ordinary negligence. The de Beckers appealed.[4]

## DISCUSSION

"We review a district court order granting a motion to dismiss de novo." *Zohar v. Zbiegien*, 130 Nev. 733, 736, 334 P.3d 402, 404 (2014). We "liberally construe pleadings" because "Nevada is a notice-pleading jurisdiction." *Hay v. Hay*, 100 Nev. 196, 198, 678 P.2d 672, 674 (1984). In adjudicating a motion to dismiss, all factual allegations in the complaint are deemed as true and all inferences are drawn in the plaintiff's favor. *Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672. A "complaint should be dismissed only if it appears beyond a doubt that [the plaintiffs] could prove no set of facts, which, if true, would entitle [them] to relief." *Id.* We also review a "district court's decision to dismiss [a] complaint for failing to comply with

---

[4]On appeal, the de Beckers do not challenge the dismissal of the wrongful death claim, the dismissal of the punitive damages request, or the district court's finding that Desert Springs was not liable under a theory of vicarious liability.

NRS 41A.071 de novo." *Yafchak v. S. Las Vegas Med. Invs., LLC*, 138 Nev., Adv. Op. 70, 519 P.3d 37, 40 (2022). In addition, we "review issues of statutory construction de novo." *Zohar*, 130 Nev. at 737, 334 P.3d at 405. "If a statute is clear on its face, we will not look beyond its plain language." *Id.*

The de Beckers argue that their claims are exempt from the NRS 41A.071 expert affidavit requirement because they sound in ordinary negligence and allege lack of consent; that even if required, their expert declaration was sufficient or they should have been permitted to amend it; and that their claims are not barred by the PREP Act. Addressing each argument in turn, we agree that the de Beckers' expert declaration was sufficient as to the hospital, but we disagree with all other contentions.

*The de Beckers' claims allege professional negligence*

The de Beckers argue that their claims sound in ordinary negligence because jurors do not need expert testimony to decide whether the physicians and hospital failed to communicate with Hal's representatives or whether it was negligent to give Hal a treatment that he did not consent to. We disagree.

Professional negligence is "the failure of a provider of health care, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." NRS 41A.015. In *Limprasert v. PAM Specialty Hospital of Las Vegas, LLC*, we held that "to distinguish professional from ordinary negligence the relevant question is whether the claim pertains to an action that occurred within the course of a professional relationship." 140 Nev., Adv. Op. 45, 550 P.3d 825, 835 (2024). "If it does, it sounds in professional negligence and requires an affidavit under NRS

41A.071," unless it falls under one of the five, narrow statutory res ipsa loquitur exceptions enumerated in NRS 41A.100. *Id.*

The de Beckers alleged that Drs. Lam and Bhandari and Desert Springs are all providers of health care. They further alleged that the doctors and hospital failed to communicate with Hal and his family, failed to obtain Hal's informed consent, and allowed media narratives to dictate which drugs they used to treat Hal. Thus, the nature of the de Beckers' allegations is that, when rendering services within a professional relationship, providers of health care were negligent by failing to communicate, failing to obtain consent, and allowing outside narratives to dictate treatment. Accordingly, we conclude that the de Beckers' claims allege professional negligence. Moreover, none of the five res ipsa loquitur exceptions enumerated in NRS 41A.100 are alleged. Therefore, we conclude that the de Beckers' claims require an expert affidavit.

*The de Beckers' consent claim also requires an expert affidavit*

The de Beckers also contend that they are exempt from the affidavit requirement because they allege a total lack of consent, which amounts to a general tort claim for battery. We disagree.

In *Humboldt General Hospital v. Sixth Judicial District Court*, we recognized that "when consent to a treatment or procedure is completely lacking, the justifications supporting a medical expert affidavit are diminished." 132 Nev. 544, 549, 376 P.3d 167, 171 (2016). Therefore, we concluded, "where a plaintiff claims not to have consented at all to the treatment or procedure performed by a physician or hospital . . . such an allegation constitutes a battery claim." *Id.* at 550, 376 P.3d at 172. We further concluded, however, that "where general consent is provided for a particular treatment or procedure, and a question arises regarding whether

Supreme Court
of
Nevada

(O) 1947A

the scope of that consent was exceeded, an expert medical affidavit is necessary." *Id.* at 550-51, 376 P.3d at 172.

*Humboldt* dealt with facts similar to those presented here, and we concluded there that the plaintiff needed to provide an expert affidavit where she had consented to an intrauterine device (IUD) procedure but alleged that she had not consented to receive an IUD that lacked FDA approval. *Id.* at 551, 376 P.3d at 172. We similarly conclude that the de Beckers' consent claim is a professional negligence claim rather than a battery claim. Hal's consent to treatment was not completely lacking; instead, Hal consented to receive COVID-19 treatment from the doctors and Desert Springs by being admitted to receive constant medical attention. What Hal assertedly did not consent to was the administration of remdesivir. Accordingly, we conclude that the de Beckers' claim is about whether the scope of Hal's consent was exceeded. Thus, it is a claim for professional negligence, and an expert affidavit is required.

*The sufficiency of the expert declaration pursuant to NRS 41A.071*

Determining that the de Beckers' claims are for professional negligence and require an expert affidavit, we next turn to whether the de Beckers' expert declaration met the statutory requirements. The de Beckers argue that their expert declaration complies with NRS 41A.071 as to the doctors and the hospital. We disagree that it is sufficient as to the doctors, but we agree that it is sufficient as to the hospital.

In relevant part, NRS 41A.071 provides that

> [i]f an action for professional negligence is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit that:
>
> . . .

SUPREME COURT
OF
NEVADA




(O) 1947A

9

3. Identifies by name, or describes by conduct, each provider of health care who is alleged to be negligent; and

4. Sets forth factually a specific act or acts of alleged negligence separately as to each defendant in simple, concise and direct terms.

To fulfill the statute's "purpose of deterring frivolous claims and providing defendants with notice of the claims against them, while also complying with the notice-pleading standards for complaints, the district court should read a medical malpractice complaint and affidavit of merit together when determining whether the affidavit meets the requirements of NRS 41A.071." *Zohar*, 130 Nev. at 735, 334 P.3d at 403.

To determine whether NRS 41A.071(4) was satisfied, we evaluate whether allegations relating to the standard of care and a breach of that standard are present. *See Monk v. Ching*, 139 Nev., Adv. Op. 18, 531 P.3d 600, 602 (2023). In *Monk*, we read the declaration in conjunction with the complaint and concluded that NRS 41A.071 was not satisfied when neither document "adequately identifie[d] the specific roles played by each individual respondent" or identified "the relevant standards of care or any opinion as to how, or even whether, each respondent breached that standard to a reasonable degree of medical probability." *Id.*; *see also Valley Health Sys., LLC v. Eighth Jud. Dist. Ct.*, No. 85096, 2023 WL 2799438, at *2 (Nev. Apr. 5, 2023) (Order Granting Petition) (concluding the district court erred by denying a motion to dismiss when plaintiff and her experts detailed the negligence of providers and failed to state in simple, concise, and direct terms how the hospital was *separately* negligent from its providers); *Soong v. Eighth Jud. Dist. Ct.*, No. 82472, 2021 WL 2935695, at *1-2 (Nev. July 12, 2021) (Order Granting Petition for Writ of Mandamus) (instructing the district court to dismiss because the declarations were defective as to

SUPREME COURT
OF
NEVADA

(O) 1947A

the doctor when they opined only that the doctor, along with other named members of the surgical team, acted below the standard of care when positioning and approving the positioning of the patient for surgery; conceded medical records did not indicate who positioned the patient for surgery; and contained no evidence confirming whether the doctor followed the standards during the surgery).

*The declaration is insufficient as to the doctors*

Specific to Dr. Lam, the de Beckers allege that "[b]etween May 9 and May 12, 2021[,] Dr. Lam was the attending physician who oversaw and was responsible for Hal's treatment on each of those days." Other than indicating where Dr. Lam was residing and doing business for jurisdiction and venue purposes, neither the complaint nor the expert declaration otherwise mentioned Dr. Lam separately. Specific to Dr. Bhandari, the de Beckers allege that "Dr. Bhandari served in that role on May 11, 2021," referring to the role of attending physician who oversaw and was responsible for Hal's treatment. There were no statements in either the complaint or the expert declaration describing Dr. Bhandari's actions separately, apart from a statement related to jurisdiction and venue. The complaint also indicated that another doctor, whose dismissal from the action is not being challenged on appeal, "Dr. Quereshi [sic][,] oversaw Hal's treatment throughout his stay at the hospital."

Both doctors are identified by name in the complaint and expert declaration as required by NRS 41A.071(3). We conclude, however, that there are no acts of alleged negligence in the complaint and expert declaration that are set forth separately and specifically as to either Dr. Lam or Dr. Bhandari. Rather, the allegations about Drs. Lam and Bhandari are almost exclusively allegations against the treating physicians generally or the two of them collectively. The de Beckers argue that information in

(O) 1947A

the complaint regarding the dates on which each doctor worked clarifies which allegation pertains to which doctor. The date information, however, does not clarify the matter because the date ranges are overlapping. In particular, Dr. Lam is alleged to have been Hal's attending physician on *each* of the days between May 9 and 12, 2021, yet Dr. Bhandari is alleged to have been Hal's attending physician on May 11, 2021. Thus, the allegations cannot be parsed by sorting allegations pertaining to Dr. Lam and Dr. Bhandari by date. Because there are no allegations relating to the specific acts of negligence as to Dr. Lam individually or Dr. Bhandari individually, we conclude that the expert declaration does not satisfy NRS 41A.071(4) as to the claims against the two doctors.

*The declaration was sufficient as to the hospital*

Specific to Desert Springs, the de Beckers allege that Hal was admitted to Desert Springs to ensure he received treatment should his symptoms worsen. They also allege that Hal's surrogate "made it clear to the hospital in writing that he wished to have his father continue taking ivermectin, and he was willing to sign a waiver of liability for the hospital and doctor(s)." The de Beckers further allege that the hospital refused to respond to a lawyer representing Hal and his family or to other correspondence. Moreover, the de Beckers assert that, generally, hospital administrators often overruled doctors who were prescribing ivermectin because hospital administrators wanted to curry favor with the federal government, which was "pushing COVID-19 vaccines, and other novel treatments, as the only 'treatment' for COVID-19." Their complaint states, "That is exactly what happened at Desert Springs while it had Hal in its care." Specifically, "[o]ne doctor at the hospital would approve ivermectin, consistent with the professional opinion of Hal's personal physician (and the patient's and family's wishes) while someone else at the hospital would

SUPREME COURT
OF
NEVADA

(O) 1947A

12

overrule that decision and forbid the treatment without explanation." Further, the de Beckers allege that "Desert Springs breached its duty of care as a healthcare provider by not requiring and/or not ensuring that hospital staff obtained informed consent from Hal or his surrogate while Hal was being treated in a non-urgent setting."

Although the expert declaration does not include specific allegations identifying acts of negligence as to the hospital individually, we read the affidavit in conjunction with the complaint. Doing so, the complaint and expert declaration identify Desert Springs. Even when the documents simply refer to "the hospital," it is clear the allegations refer to the only hospital involved in the case, Desert Springs. Accordingly, we conclude the de Beckers' declaration satisfied NRS 41A.071(3) as to the hospital.

To evaluate whether NRS 41A.071(4) was satisfied as to the hospital, we look to the separate allegations that pertain to Desert Springs. Specific to Desert Springs, the de Beckers allege that the hospital breached its duty of care by not ensuring that its staff obtained Hal's or his surrogate's informed consent. We conclude that this allegation is sufficient to satisfy NRS 41A.071(4) as to the hospital because the allegation sets forth separately and specifically the standard of care and the breach by Desert Springs. Accordingly, we conclude that the de Beckers' expert declaration was sufficient as to the hospital.

*The district court did not err by dismissing the complaint as to the doctors*

Having determined that the expert declaration is insufficient as to the doctors, we next turn to the propriety of dismissal under such circumstances. The de Beckers argue that they should have been granted leave to amend to add more details if there was any doubt as to the sufficiency of their allegations. We disagree.

SUPREME COURT
OF
NEVADA

(O) 1947A

13

When an action is filed against a provider of health care for professional negligence without a sufficient supporting affidavit as required by NRS 41A.071, the complaint cannot be amended to cure the deficiency and the professional negligence claim must be dismissed.[5] *Washoe Med. Ctr. v. Second Jud. Dist. Ct.*, 122 Nev. 1298, 1300, 148 P.3d 790, 792 (2006). In a case that we decided before *Washoe Medical Center*, we addressed, in

---

[5]We recognize that under facts not presented here, a complaint may satisfy the affidavit requirement by referring to an existing affidavit even if that affidavit was not filed along with the complaint. For example, in *Baxter v. Dignity Health*, we determined that "where the complaint incorporates by reference a preexisting affidavit of merit, which is thereafter filed and served with the complaint, and no party contests the authenticity of the affidavit or its date, the affidavit of merit may properly be treated as part of the pleadings in evaluating a motion to dismiss." 131 Nev. 759, 765, 357 P.3d 927, 931 (2015). In such circumstances, the district court need not dismiss the complaint for want of an affidavit physically attached to the complaint when the complaint was filed or even contemporaneously filed itself. *Id.* at 764-65, 357 P.3d at 931. The court may "consider unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* at 764, 357 P.3d at 930 (internal quotation marks omitted). In *Limprasert v. PAM Specialty Hospital of Las Vegas LLC*, we similarly concluded that dismissal was not warranted under NRS 41A.071. 140 Nev., Adv. Op. 45, 550 P.3d 825, 834 (2024). There, the declaration of merit supporting the claims was referenced in the complaint but not filed until after the medical provider moved to dismiss. *Id.* The declaration, however, was dated the same day as the complaint, central to the theory of relief, and made under penalty of perjury. *Id.* Further, counsel attested that the complaint was not filed until the declaration had been received in their office, and the medical provider's counsel trusted plaintiff's counsel's representation regarding the declaration's authenticity. *Id.* Under such circumstances, NRS 41A.071 did not compel dismissal. *Id.* In sum, that an affidavit is not physically attached to the complaint on filing does not excuse the district court of considering the relevant circumstances in assessing whether a complaint runs afoul of NRS 41A.071.

dicta, a plaintiff's alternative argument that he should have been able to amend his complaint to include a new affidavit. Specifically, we stated that

> [b]ecause NRS 41A.071 contains no explicit prohibition against amendments, and because legislative changes in the substantive law may not unduly impinge upon the ability of the judiciary to manage litigation, we conclude that a district court, within its sound discretion and considering the need for judicial economy, may grant leave to amend malpractice complaints supported by disputed affidavits under circumstances where justice so requires.

*Borger v. Eighth Jud. Dist. Ct.*, 120 Nev. 1021, 1029-30, 102 P.3d 600, 606 (2004). In an unpublished order, we identified the more recent decision in *Washoe Medical Center* as controlling and the language relating to potential amendments in *Borger* as dictum to which stare decisis need not be applied. *See Alemi v. Eighth Jud. Dist. Ct.*, No. 66917, 2016 WL 115651, at *2 n.3 (Nev. Jan. 7, 2016) (Order Granting Petition for Writ of Mandamus). We now clarify that *Washoe Medical Center* controls and that the language in *Borger* is dictum because *Borger* was decided on other grounds. Accordingly, we clarify that when an accompanying expert affidavit fails to satisfy NRS 41A.071, a complaint alleging a professional negligence claim may not be amended to cure the deficiency but must be dismissed as to that claim.

Here, the expert declaration is deficient as to Drs. Lam and Bhandari. Accordingly, we conclude that the district court did not err by dismissing the complaint as to the doctors. The expert declaration was not deficient, however, as to Desert Springs. Therefore, we conclude the motion to dismiss was impermissibly granted as to Desert Springs on this basis. Nevertheless, we further conclude that the claim against Desert Springs is barred by the PREP Act.

SUPREME COURT
OF
NEVADA

(O) 1947A

15

*The PREP Act bars the de Beckers' surviving claim against Desert Springs*

Finally, we turn to whether the de Beckers' surviving claim against the hospital is barred by the PREP Act. The de Beckers argue that the PREP Act does not bar their claims because Hal's death was independent from him being administered remdesivir. We disagree.

The PREP Act allows the Health and Human Services Secretary "to limit legal liability for losses relating to the administration of medical countermeasures such as diagnostics, treatments, and vaccines" during a public health emergency. *Cannon v. Watermark Ret. Cmtys., Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022) (internal quotation marks omitted). PREP Act immunity "is triggered by a declaration from the Secretary identifying the threat to public health, the period during which immunity is in effect, and other particulars." *Id.* During the effective period, the PREP Act preempts state law claims. 42 U.S.C. § 247d-6d(b)(8).

In relevant part, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" following a triggering declaration as to that countermeasure. *Id.* § 247d-6d(a)(1). This immunity is limited to "any claim for loss that has a *causal* relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with . . . dispensing, prescribing, administration, . . . or use of such countermeasure." *Id.* § 247d-6d(a)(2)(B) (emphasis added).

"The PREP Act does not explicitly define the term 'administration' but does assign the Secretary the responsibility to provide relevant conditions in the Declaration." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures

SUPREME COURT
OF
NEVADA

(O) 1947A

16

Against COVID-19, 85 Fed. Reg. 15198-01 (Mar. 17, 2020). Accordingly, in relevant part, the Secretary provided in the 2020 Declaration related to COVID-19 that "Administration of a Covered Countermeasure means physical provision of the countermeasures to recipients." *Id.* The Secretary continued, defining "administration" as extending, in relevant part, "to physical provision of a countermeasure to a recipient, such as vaccination or handing drugs to patients." *Id.*

Here, there is no dispute that Desert Springs was a covered person under the Act, that the loss suffered was Hal's death, that remdesivir was physically provided to Hal, that remdesivir was a covered countermeasure, or that any other requirement under the PREP Act was not met, aside from the issue on appeal. Thus, the question before us is whether the de Beckers' claim for Hal's death was caused by, arose out of, related to, or resulted from Desert Springs administering him remdesivir.

The term "caused by" denotes actual cause, meaning a plaintiff must prove that "but for" the event, the plaintiff's damages would not have occurred. *Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 120 Nev. 777, 784, 101 P.3d 792, 797 (2004); *see also M.T. ex rel. M.K. v. Walmart Stores, Inc.*, 528 P.3d 1067, 1083 (Kan. Ct. App. 2023) (referring to causally related as a "but for" test). The term "arise out of" requires "only a general causal connection" because it is broader than "caused by." *See Rivera v. Nev. Med. Liab. Ins. Co.*, 107 Nev. 450, 452-53, 814 P.2d 71, 72 (1991) (internal quotation marks omitted). "The ordinary meaning of [relating to] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,'—and the words thus express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *Black's Law*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Dictionary* 1158 (5th ed. 1979)); *see also Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (interpreting "relates to" "in the normal sense of the phrase" as denoting having "a connection with or reference to" (internal quotation and alteration marks omitted)). In its ordinary meaning, "a thing 'results' [from something] when it [a]rise[s] as an effect, issue, or outcome *from* some action, process or design." *Burrage v. United States*, 571 U.S. 204, 210-11 (2014) (quoting 2 *The New Shorter Oxford English Dictionary* 2570 (1993)). "Results from imposes . . . a requirement of actual causality . . . [or] proof that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 211 (internal quotation marks omitted).

The plain language of caused by, arising out of, relating to, and resulting from is clear on its face because each term's definition is commonly understood to have a single meaning in the legal context. Therefore, we will not go beyond the plain language.

The de Beckers' only sufficient allegation under NRS 41A.071 is that the hospital breached its duty of care by not ensuring that its staff obtained Hal's or his surrogate's informed consent. Therefore, the question is whether the de Beckers' claim that Hal's death was caused by Desert Springs' failure to obtain informed consent for remdesivir treatment is related to its administration of remdesivir. We conclude that it is. The de Beckers alleged that Desert Springs was negligent by failing to obtain informed consent to use remdesivir and that the professional negligence of Desert Springs caused Hal's death. Because the failure to obtain consent to administer remdesivir has a connection with the administration of remdesivir, such that it causally relates to the administration of a covered countermeasure, we conclude the claim is barred by the PREP Act.

Supreme Court
of
Nevada

(O) 1947A

18

Other jurisdictions have likewise determined that failing to obtain informed consent to use a covered countermeasure is a claim barred by the PREP Act. For example, the Court of Appeals of Kansas concluded that a mother's claims that her minor child was administered a COVID-19 vaccine without parental consent arose out of and related to the administration of the vaccine and thus fell within PREP Act immunity. *See Walmart Stores, Inc.*, 528 P.3d at 1070. A federal district court also held that "the PREP Act applies to claims based on failure to obtain consent" when a decedent was administered two drugs that were both covered countermeasures, one of which was remdesivir, without an explanation of the side effects or the consent of the decedent or any family members. *Baghikian v. Providence Health & Servs.*, No. CV 23-9082-JFW(JPRx), 2024 WL 487769, at *1, *4 (C.D. Cal. Feb. 6, 2024). Additionally, a New York intermediate court similarly concluded that a claim that a minor was administered a vaccine without parental consent was barred by the PREP Act because the Act preempts "all state law tort claims arising from the administration of covered countermeasures by a qualified person pursuant to a declaration by the Secretary, including one based upon a defendant's failure to obtain consent." *Parker v. St. Lawrence Cnty. Pub. Health Dep't*, 954 N.Y.S.2d 259, 261-62 (App. Div. 2012).

We agree with these courts. We hold that failing to obtain informed consent before administering a covered countermeasure is a claim barred by the PREP Act. Because the allegation about the cause of the de Beckers' loss is related to the administration of remdesivir, a covered countermeasure, the claim is barred under the plain language of the PREP Act. Accordingly, we conclude that the district court did not err in

dismissing, finding the de Beckers' claim that Desert Springs failed to obtain informed consent to treat Hal with remdesivir was barred.

## CONCLUSION

We clarify that a professional negligence claim must be dismissed when NRS 41A.071 requires a supporting affidavit but one is not provided or the affidavit provided is insufficient. Any suggestion in *Borger* that amendment may be available when expert affidavits are deficient was dictum. Our controlling decision in *Washoe Medical Center* makes clear that the complaint cannot be amended to cure the deficiency but must be dismissed as to the professional negligence claim(s) in that instance. Further, we hold that the PREP Act bars a claim for failing to obtain informed consent before administering a covered countermeasure. Although the de Beckers filed an expert declaration for their professional negligence claims, the declaration was insufficient as to the doctors under NRS 41A.071. Thus, the district court did not err by dismissing the complaint as to the doctors. The declaration was sufficient as to Desert Springs; however, that claim is barred by the PREP Act. Accordingly, we affirm the dismissal of the complaint.

_____, J.
Stiglich

We concur:

_____, J.
Pickering

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A